## Weikel v. Weikel.

Nov. 8, 1939.

Burke & Lawton and Edward G. Klemm for appellant.

Anthony R. Hellmann and Michael M. Hellmann for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Richie V. Weikel, the plaintiff below, recovered a judgment for $1,000 with interest thereon from June 8, 1933, again Estella C. Weikel, and the defendant has appealed. Her sole complaint is that the court failed to instruct the jury on her theory of the case.

The appellant is appellee's mother-in-law. Appellee is the widow of Walter Weikel, who died January 30, 1930. Walter Weikel left an insurance policy for $1,000 in which his wife was named the beneficiary. On February 7, 1930, an agent of the insurance company delivered to appellee a check for $1,000 and she indorsed the check and delivered it to appellant. Appellee and her husband lived in Louisville in a house owned by appellee, but immediately after Walter Weikel's death she and

her infant daughter, Audrey C. Weikel, who was about three years old when her father died, went to appellant's home to live at the latter's solicitation. They lived in appellant's home until July 25, 1933. On February 23, 1937, Richie V. Weikel brought this action against her mother-in-law to recover $1,000 with interest from April, 1933. She alleged in her petition that in February, 1930, she delivered to the defendant $1,000 and authorized defendant to invest said fund for her, and defendant agreed and promised to make an investment and later informed plaintiff that the money had been invested in a bond yielding six per cent. annually, payable semiannually, and thereafter at six month intervals, up to and including April, 1933, defendant turned over to plaintiff $30 and informed her that same was the semi-annual interest on the bond; that thereafter, defendant having refused to pay any interest on the bond, plaintiff demanded of her delivery of the security or the return of the $1,000, but defendant failed and refused to do either. In an amended petition plaintiff alleged that defendant did not invest the $1,000 in accordance with plaintiff's instructions and in accordance with the agreement between plaintiff and defendant. The defendant filed an answer which was a traverse. Later she filed an amended answer in which she alleged, in substance, that plaintiff was without sufficient means to support herself and child, and that after the death of her husband plaintiff and her child, Audrey C. Weikel, made their home with defendant, mother-in-law of plaintiff and grandmother of the child, and received board and maintenance for a period of three years and six months, and that during the entire time plaintiff and her child were supported and maintained by defendant and that the child was supported by defendant for some years thereafter; that on February 7, 1930, plaintiff did turn over to defendant $1,000 but at that time plaintiff was indebted to defendant in a sum in excess of $700; that plaintiff said she wanted to turn the proceeds of the insurance policy over to the defendant in payment of past and future obligations, it then being contemplated that she would live with defendant, plaintiff having no means of support for herself and child, and that plaintiff became indebted to defendant for support and maintenance for herself and child in a sum in excess of $1,500. She further alleged that instead of applying the proceeds of the insurance policy to defendant's own use and benefit she created a voluntary trust for the sole

use and benefit of plaintiff's child and her grandchild, Audrey C. Weikel, with herself as trustee, and for that purpose purchased from the Bankers Bond Company a six per cent. mortgage real estate bond, and that this was done "by agreement with and the full understanding and knowledge of plaintiff."

Appellee testified that when the agent of the insurance company delivered to her the $1,000 check she handed it to appellant and requested appellant to invest the proceeds for her, which appellant agreed to do; that on the following day appellant requested her to indorse the check and thereafter informed her that the proceeds had been invested in a bond purchased from the Bankers Bond Company. From that time until June, 1933, appellant gave her $30 twice a year as interest on the bond. Appellant denied that appellee requested her to invest the proceeds of the check, but testified that appellee gave her the money and asked her to apply it in payment of appellee's past and future obligations. She further testified that she accepted the money but declined to use it for her own benefit, but instead invested it for the use and benefit of her grandchild with appellee's knowledge and consent. Her testimony on this point was as follows:

"The insurance agent brought the check. When he stated his business to her, why I left the room; and after he had gone, she said: 'There is that check.' She said: 'I don't want to see it. I don't want to touch it.' And then she turned that over to me. I don't remember whether it was that day or a day or so after that. I don't recall exactly. * * * She said that she wanted to feel independent, and for me to take that for what she owed me, or would owe me; and I said: 'Well, you don't know hardly what you want to do.' And I said: 'You just think this matter over for a few days, and we will see what can be done about it.' And it stood that way for several days; and she said: 'Well, I don't want it.' * * * Well, I recall that she endorsed it; but I could not tell you whether that was one day or two or three days after that, that she endorsed the check and gave it to me; because I told her,—I said: 'I can't make any use of it without you endorsing it.' And so she endorsed it. * * * Well, I kept it around the house for a week or ten days; and I just didn't hardly know what to do about it; and I talked it over with my husband, and he said

'Well—'. I said I didn't want to take the money, and he said: 'Well, I don't know what to tell you to do.' And I thought well, I would then take it and invest it for the child, because I didn't want the money myself. * * * After considering the matter, I decided I would take it and invest it for the benefit of the child. And that is what I did do.''

She was also asked these questions and made these answers:

''Q. Did you later tell your daughter that you had made this gift to the child, and invested the money in a bond for the child? A. Yes.

''Q. Now, did you pay the interest to the child during the time the bond paid interest, or rather turned it over to the mother? A. In order that she might feel a sense of—feel independent, I thought she would rather have it for spending money than to feel that I had taken it right out of my pocket; and I was not trying to accumulate anything; so I just gave the interest, as it came due, over to her for spending money. And I continued to do that, and the bond defaulted; and I continued to give her the amount; and I didn't say anything about the bond defaulting, or anything like that.''

On cross-examination she was asked this question and made this answer:

''Q. If you made no particular arrangements about board, now, Mrs. Weikel, when was the first time you told your daughter-in-law that you had invested this one thousand dollars for the benefit of the child, your grandchild? A. I could not tell you just exactly the time, but it must—that was shortly after I went and invested it. It might have been the very day I invested it, or it might have been a day or so later. I do not recall.''

The proof shows that the check was delivered to appellant February 7, was indorsed by appellee February 8, and was held by appellant until February 17, when she deposited it in the National Bank of Kentucky. On the same day she purchased from the Bankers Bond Company one $1,000 first mortgage six per cent. insured bond at par plus accrued interest, amounting in all to $1,011.50. She gave to the Bankers Bond Company a check on the National Bank of Kentucky, which was paid

February 18, 1930. On the day the bond was purchased, she placed it in an envelope, indorsed thereon, ''This is for Audrey C. Weikel,'' and placed the envelope containing the bond in her safety deposit box in the bank. It will be observed that appellant's defense was that appellee turned over to her the check in payment of past and future indebtedness and that she accepted it, but instead of using it for such purpose invested the proceeds for the use and benefit of her grandchild with the knowledge and consent of appellee. This theory of the case should have been presented to the jury. If appellee consented to the investment of the proceeds of the insurance policy for the benefit of her child, she cannot recover for herself in an action against Mrs. Estella C. Weikel.

In instruction No. 1 the court told the jury if they believed from the evidence that the plaintiff delivered the proceeds of the insurance policy to the defendant and that the defendant promised and agreed to invest the said proceeds for plaintiff, they should find for plaintiff and in instruction No. 2 the jury were told to find for the defendant if they believed from the evidence the plaintiff delivered the proceeds of such insurance policy in payment of any past or future obligations. The defendant offered an instruction in which the jury were told to find for the defendant if they believed from the evidence that after the $1,000 was turned over to the defendant by plaintiff it was understood and agreed between the plaintiff and defendant that said $1,000 should be invested by the defendant, Estella Weikel, in a bond for the use and benefit of Audrey C. Weikel, the child of the plaintiff, and the defendant did so invest the money under said agreement. This instruction presented appellant's theory of the case and should have been given. As heretofore stated, it was appellant's claim that appellee offered to give her the proceeds of the life insurance policy in payment of past indebtedness owing by her to appellant and future indebtedness to be incurred, but that appellant refused to accept the money for that purpose but did accept it for the purpose of investing it for the use and benefit of plaintiff's child.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.